CLERKS OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
July 10, 2026

LAURA A. AUSTIN, CLERK
BY: s/ D. AUDIA
        DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | | |
|---|---|---|
| Austin W. Newsom | ) | |
| | ) | |
| and | ) | |
| | ) | |
| Central VA Marine, | ) | |
| | ) | Civil Action No. 3:25-cv-00074 |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Amazon Data Services, Inc., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

Plaintiff Austin W. Newsom resides next to a construction site where Defendant Amazon Data Services, Inc. ("Amazon") is building a new data center campus. Plaintiff Central VA Marine, a boat repair and detailing business that is co-owned by Newsom, maintains its principal office on Newsom's lot. Since the data center construction began, Plaintiffs allege that they have experienced loud noises, flashing blue lights, reduced air quality from dust and debris, heightened traffic, trucks obstructing access to Newsom's lot, water contamination, flooding of the adjacent roadway, and structural damage to Newsom's house. Plaintiffs also allege that several Central VA Marine customers said they will not seek boat services at Newsom's property until construction has ended. Consequently, Plaintiffs now bring private nuisance and temporary injunctive relief claims against Amazon.

This matter is before the court on Amazon's motion to dismiss Plaintiffs' complaint for failure to state a claim. (Dkt. 10.) For the following reasons, the court will grant in part and deny in part the motion.

## I.      Background

### A.  Factual History[1]

Newsom owns and resides in a house located at 2623 Jefferson Highway, Louisa, Virginia 23093 ("the Newsom Property"). (Compl. ¶ 3 (Dkt. 1-1).) He is a co-owner of Central VA Marine, a limited partnership that "specializes in boat repair and detailing." (*Id.* ¶ 4.) Central VA Marine's principal office is on the Newsom Property. (*Id.*) Its clientele includes "owners of high-end recreational boats that expect a clean and professional environment for the care of their vehicles." (*Id.* ¶ 19.)

In March 2025, Amazon began construction work to build the "Northeast Creek Technology Campus," a new data center campus in Louisa County, Virginia ("the Data Center"). (*Id.* ¶ 6.) Amazon is building on a series of contiguous lots that it owns in Louisa County (collectively, "the Amazon Property"). (*Id.* ¶¶ 5–6.) One of the Amazon lots—located at 2694 Jefferson Highway, Louisa, VA 23093—is immediately adjacent to the Newsom Property. (*Id.* ¶ 5.)

The Amazon Property construction work began in or about March 2025 and is scheduled to be completed around 2031. (*Id.* ¶¶ 6–7.) The Data Center plans include construction of "10 buildings, three substations, logistic and administrative buildings,

---

[1] The facts are taken from Plaintiffs' complaint and, for purposes of resolving the motion to dismiss, are presumed true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

stormwater structures, and associated infrastructures." (*Id.* ¶ 8.) Amazon is developing another data center in Louisa County, the "Lake Anna Tech Campus," which is scheduled for completion in or around 2027. (*Id.* ¶ 9.) Amazon had also planned to build a third data center but withdrew its plans in July 2025 after Louisa residents "expressed strong resistance to its construction." (*Id.*)

Newsom and Central VA Marine claim that the Data Center's construction has interfered with their use and enjoyment of the Newsom Property in various ways. They maintain that construction has subjected the Newsom Property to "a barrage of noise and light pollution." (*Id.* ¶ 13.) The noise has been "extraordinarily loud and at hours prohibited by" Louisa County Code of Ordinances §§ 51-2, 51-3(10). (*Id.* ¶ 14); *see* Louisa Cnty., Va., Code of Ordinances § 51-3(10) (prohibiting noise that "can be heard at adjoining property lines[] from sunset until 7:00 a.m." and, in certain months, "from sunset to 6:00 a.m."). Flashing blue lights shine from the Amazon Property almost continuously, including at night. (*Id.* ¶ 15.)

Plaintiffs also complain about traffic. Their access is limited by trucks that "frequently obstruct the roadway in front of the Newsom Property." (*Id.* ¶ 17.) "[H]eavy construction has damaged nearby roads and created safety hazards." (*Id.* ¶ 16.) Central VA Marine's customers have experienced "multiple near-accidents" when trying to enter or leave the Newsom Property with their boats in tow. (*Id.* ¶ 18.) Several customers have said that they will refrain from getting their boats serviced at the Newsom Property until the construction is complete. (*Id.* ¶ 20.)

The construction has also created greater environmental and structural problems for the Newsom Property. Shortly after the construction started, Newsom's water began turning brown intermittently. (*Id.* ¶¶ 11–12.) This had not happened before the construction, and Newsom is now reluctant to drink the water at his home because he fears for his health. (*Id.*) Dust and debris from the construction have decreased air quality on the Newsom Property. (*Id.* ¶ 21.) Excavation has "disrupted natural drainage patterns," leading to significant flooding in the roadway near the Newsom Property that had not existed before construction. (*Id.* ¶ 23.) Moreover, the "heavy machinery" and "excavation equipment" used on the Amazon Property has "caused significant vibrations to Mr. Newsom's home on the Newsom Property, resulting in cracking to the structure of the home." (*Id.* ¶ 22.) In addition to "significantly devalu[ing] the Newsom Property," the Amazon construction has caused harm to Newsom's mental health. (*Id.* ¶¶ 24–25.)

## B. Procedural History

On August 11, 2025, Plaintiffs filed a complaint and motion for temporary injunction against Amazon in the Circuit Court for Louisa County. (Dkt. 1-1 at 7–13, 18–20.) The complaint contains two counts. Count 1 alleges private nuisance, (Compl. ¶¶ 26–30); and Count 2 asks for "temporary injunctive relief," (*id.* ¶¶ 31–37). Amazon timely removed the suit to the U.S. District Court for the Western District of Virginia on September 15, 2025. (Dkt. 1.)

On September 19, 2025, the parties filed a joint consent motion asking to extend the deadline for Amazon to file a responsive pleading and for an order confirming that Amazon

was not obligated to respond to Plaintiffs' August 11 motion for temporary injunction in this court. (Dkt. 7.) The parties had conferred after removal and agreed "that the Motion for Temporary Injunction was [] not presently pending in this Court." (*Id.* ¶ 5.) Plaintiffs advised that they "intended to notice and file a separately docketed motion for injunctive relief in this Court in the future." (*Id.*) On September 19, United States Magistrate Judge Joel C. Hoppe granted the parties' joint motion for extension and confirmed that Amazon need not file an opposition to the motion for temporary injunction, as it was not pending. (Dkt. 8.)

On October 6, 2025, Amazon moved to dismiss Plaintiffs' complaint for failure to state a claim upon which relief can be granted. (Dkts. 10, 11.) Both parties were granted an extension of time to file their response and reply briefs. (Dkts. 18, 19.) Plaintiffs timely opposed Amazon's motion on October 27. (Dkt. 20.) Amazon timely replied on November 10, 2025. (Dkt. 21.)

On May 6, 2026, Plaintiffs filed a motion for a preliminary injunction. (Dkt. 27.) Both parties filed their briefs in accordance with the court's orders. (Dkts. 33, 34.) A hearing on the preliminary injunction motion is scheduled for August 19, 2026. (Dkt. 36.)

## II.    Standard of Review

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). These motions do not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 616 (4th Cir. 2020) (quoting *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016)). To survive a Rule 12(b)(6) motion to

dismiss, a plaintiff must plead sufficient factual allegations to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In its review, "a court must consider the factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff." *Bing*, 959 F.3d at 616. However, the court need not assume the truth of any "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009) (citing *Iqbal*, 556 U.S. at 678).

### III.    Analysis

#### A.  Nuisance Claim (Count 1)

In its motion to dismiss, Amazon challenges Plaintiffs' nuisance claim on several grounds. First, Amazon argues that the complaint does not allege sufficient facts to state a plausible private nuisance claim. (Def.'s Br. at 4–5 (Dkt. 11).) Second, Amazon contends that Plaintiffs fail to state a claim for private nuisance because they do not allege a particularized injury. (*Id.* at 5–8.) Third, according to Amazon, Central VA Marine does not have sufficient interest in the Newsom Property and thus lacks standing to assert a private nuisance claim. (*Id.* at 9–10.) The court addresses each argument in turn, beginning with whether Central VA Marine has standing to bring a private nuisance claim against Amazon.

1. Central VA Marine has sufficient interest in the Newsom Property to assert a private nuisance claim against Amazon.

Amazon asserts that, without any allegations that Central VA Marine has ownership or rental rights in the Newsom Property, Central VA Marine cannot bring a private nuisance claim for the activity alleged in the complaint. (*Id.* at 9–10.) According to Plaintiffs, "[b]ecause [Central VA Marine] is an *occupant* of the Newsom Property"—as indicated by allegations that its principal office is on the property—it "has standing to bring this lawsuit." (Pl.'s Br. at 10 (Dkt. 20).)

Virginia courts "have repeatedly held that an owner *or* occupant of land has a right to recover against the operator of a private nuisance." *Bowers v. Westvaco Corp.*, 419 S.E.2d 661, 667 (Va. 1992). To constitute a private nuisance, a condition must interfere "with some right incident to *ownership or possession* of real property." *Nat'l Energy Corp. v. O'Quinn*, 286 S.E.2d 181, 182 (Va. 1982) (emphasis added); *see also* Restatement (Second) of Torts § 821E (A.L.I. 1979) (limiting recovery for private nuisance "only to those who have property rights and privileges in respect to the use and enjoyment of the land affected"). "Possession" of property "is *not* limited to occupancy under a claim of some other interest in the land." *Bowers*, 419 S.E.2d at 668 (emphasis added) (quoting Restatement (Second) of Torts, § 821E cmt. d (A.L.I. 1979)). Rather, "occupancy is a sufficient interest in itself to permit recovery," and "[t]hus members of the family of the possessor of a dwelling who occupy it along with him may properly regarded as sharing occupancy with *intent to control the land* and hence as possessors." *Id.* (emphasis added); *Wyatt v. Sussex Surry, LLC*, No. CL06–6900, 2007 WL 5969399, at *4 (Va. Cir. Ct. Nov. 2, 2007) (explaining that the possessory interest "does not have to be

ownership" and that "occupancy is a sufficient interest to permit recovery for nuisance claims").

Here, Plaintiffs do not allege that Central VA Marine has an ownership interest in the Newsom Property. But they do allege that Central VA Marine is a limited partnership and that Newsom—the owner of the Newsom Property—is one of two partners co-owning Central VA Marine. (Compl. ¶¶ 3, 4.) Central VA Marine occupies the land at issue, at least to some extent, by maintaining its "principal office [] on the Newsom Property." (*See* Pl.'s Br. at 10; Compl. ¶ 4); Restatement (Second) of Torts, § 157 (A.L.I. 1965) (defining "possession of land" as, among other things, being "in occupancy of land with intent to control it"); *id.* cmt. a (defining "occupancy" as "such acts done upon the land as manifest a claim of exclusive control of the land, and indicate to the public that he who has done them has appropriated it"). The parties do not offer, and the court does not find, Virginia authority addressing this precise scenario, where: (1) a business entity operates its principal office on a property, (2) that property is owned by a co-partner of that business entity, and (3) the business entity seeks to bring an action for private nuisance challenging interference with that property.

This case is distinguishable from *Yoon v. Gilbert Small Arms Range, Inc.*, which Amazon cites to support dismissal of Central VA Marine for lack of standing. (Def.'s Br. at 9 (citing *Yoon*, No. 125421, 1994 WL 1031063, at *1 (Va. Cir. Ct. Feb. 28, 1994).) In *Yoon*, the court found that an employee could not bring an action for private nuisance based on interference with the Golf Center premises, even though he had an ownership interest in the Golf Center and was responsible for its daily operations. *Yoon*, 1994 WL 1031063, at *1. The court

recognized the "more difficult question" of "whether the [employee's] spending substantial time on the premises and 'right to use' the premises rise to the level of occupancy or possession necessary to bring a private nuisance action," then held, without further explanation, that they do not. *Id.*

*Yoon* does not control here for several reasons. First, in its unpublished opinion, the Virginia Circuit Court does not provide reasoning as to why the employee's substantial time and right to use the premises is not enough. Second, Central VA Marine is less like the employee-plaintiff in *Yoon* and is more analogous to the Golf Center, as it is the business occupying the premises. Indeed, the court in *Yoon* noted that "the occupant of the premises here is the Golf Center," the employer-business. *Id.* This supports a finding that the complaint alleges sufficient facts to suggest that Central VA Marine, as a business occupying the premises of the Newsom Property, has standing.[2]

While the court agrees with Amazon that the necessary possessory interest to bring a private nuisance claim *can* be shown through a plaintiff's ownership or rental of the property, (*see* Def.'s Br. at 9), these are not the only two ways to demonstrate a sufficient interest. In contrast to Amazon's argument that "permissive, nonexclusive use" does not suffice to confer standing, owners of easements to land have been found to possess an adequate property

---

[2] Likewise, Central VA Marine's claim is different from that of the plaintiffs in *Anderson v. School Board of Gloucester County*, No. 3:18-cv-00745, 2020 WL 2832475, at *32–33 (E.D. Va. May 29, 2020), *McCray v. Wal-Mart Real Estate Business Trust*, No. 4:20-cv-00119, 2021 WL 149116, at *3 (E.D. Va. Jan. 15, 2021), and *Wyatt*, 2007 WL 5969399, at *4. In *Anderson* and *McCray*, the court denied plaintiffs' private nuisance claim because they were mere employees of the entity that leased or occupied the land. The case at hand does not involve a comparable claim brought by a non-owner employee. Rather, it involves an entity that occupies the property at issue. This case is also different from *Wyatt*, where the court denied standing to the "adult daughter of [plaintiff-owners]" who lived "apart from her parents, but visit[ed] the farm at least twice daily to care for the horses." 2007 WL 5969399, at *1, 4–5. Central VA Marine is less like the visiting daughter in *Wyatt,* and more like the children in *Bowers v. Westvaco Corporation* who lawfully occupied the Newsom property along with Newsom, with intent to control the land for operation of its business. 419 S.E.2d at 668.

interest to bring an action for private nuisance. *See* Restatement (Second) of Torts, § 821E(b) (A.L.I. 1979); *Brooks v. Stallings*, No. CL13001004–00, 2015 WL 13568060, at *11 (Va. Cir. Ct. Mar. 3, 2015) ("That property right in an easement may be protected by the easement holder through common law for violations such as . . . nuisance . . . ."). Moreover, in *Bowers v. Westvaco Corporation*, the Virginia Supreme Court held that children of the landowners, "as lawful occupants of the land," are entitled to recover damages for private nuisance even though their parents were the only individuals who owned the property. 419 S.E.2d at 668. Thus, Plaintiffs' failure to allege that Central VA Marine rents or owns any part of the property does not automatically preclude Central VA Marine from recovering for private nuisance.

Plaintiffs have alleged sufficient facts to raise a plausible inference that Central VA Marine is an occupant of the Newsom Property. Accordingly, the court will not dismiss Central VA Marine's nuisance claim for lack of standing.

2.  Plaintiffs allege enough facts to state a private nuisance claim.

Under Virginia law, a private nuisance is defined as "an activity which unreasonably interferes with the use and enjoyment of another's property." *City of Newport News v. Hertzler*, 221 S.E.2d 146, 150 (Va. 1976); *Adams v. Star Enter.*, 51 F.3d 417, 422 (4th Cir. 1995) (defining "nuisance" as "everything that endangers life or health, or obstructs the reasonable and comfortable use of property" (quoting *Nat'l Energy Corp.*, 286 S.E.2d at 182)). One's right to use and enjoyment is "broadly construed." *Adams*, 51 F.3d at 422. This right includes "[f]reedom from discomfort and annoyance," so long as that discomfort and annoyance is

"significant and of a kind that would be suffered by a normal person in the community." *Foley v. Harris*, 286 S.E.2d 186, 190–91 (Va. 1982).

The Supreme Court of Virginia has consistently recognized a nuisance claim arising from the operation of a business where its activity, "even though lawful, becomes obnoxious to occupants of neighboring dwellings and renders enjoyment of the structures uncomfortable by virtue of, for example, smoke, cinders, *dust*, *noise*, offensive odors, or noxious gases." *Nat'l Energy Corp.*, 286 S.E.2d at 182 (emphasis added); *see Bowers*, 419 S.E.2d at 664–66 (affirming trial court's holding that a "truck staging operation constituted a private nuisance" where plaintiffs were subjected to loud noises at all hours, constant lights shining into their house, dust covering their home, diminution in value of their home, and vibrations that cracked the concrete on their porch).

     *i.*    *Causation*

Plaintiffs must plausibly allege that Amazon, rather than some other individual or entity, is controlling or using its property in a way that caused the interferences with the Newsom Property. *Virginian Ry. Co. v. London*, 76 S.E. 306, 308 (Va. 1912) (defining a private nuisance as "the using or authorizing the use of one's property, or of anything under one's control, so as to injuriously affect an owner or occupier of property" (citation omitted)); *In re All Pending Chinese Drywall Cases*, 2010 WL 7378659, at *8 (Va. Cir. Ct. 2010). According to Amazon, Plaintiffs' complaint "fail[s] to connect the alleged conditions at the Newsom Property to any specific conduct by Amazon." (Def.'s Br. at 4.)

As an example, Amazon argues that the complaint does not actually allege that Amazon caused the Newsom Property's water to turn brown. (*Id.*) The court disagrees. Plaintiffs plainly state that Amazon was responsible for the potential contamination when they allege that "Amazon's ongoing activities, including . . . Defendants' contamination of Mr. Newsom's water supply, . . . have obstructed and interfered with Plaintiffs' reasonable and comfortable use of their property." (Compl. ¶ 27; *see* Pl.'s Br. at 3.) Plaintiffs also allege that Newsom's water issues started "[s]hortly after construction began." (Compl. ¶ 11.) At the pleading stage, accepting as true the allegation that Newsom's brown water appeared soon after the commencement of the Data Center construction, the court can draw a reasonable inference that Amazon's construction activity caused the water issues that interfered with Plaintiffs' use and enjoyment of the Newsom Property.

Amazon also argues that the complaint does not adequately attribute the roadway damage and trucks blocking Newsom Property access to Amazon and its Data Center construction. (Def.'s Br. at 5.) Regarding the roadway damage, Plaintiffs' allegation that "*heavy construction* has damaged nearby roads and created safety hazards" suggests that Amazon is responsible given its alleged control over the nearby Data Center construction. (Compl. ¶ 16 (emphasis added).) Conversely, Plaintiffs' bare allegations that "[t]rucks frequently obstruct the roadway" and "there have been multiple near-accidents" are insufficient to allege causation as to these interferences. (*See id.* ¶¶ 17–18.) Plaintiffs do not allege that the trucks blocking their access are at all affiliated with Amazon. Nor do they allege any details linking the alleged blockages and near-accidents to the Amazon Property or to Amazon-controlled construction

- 12 -

activities. Thus, Plaintiffs do not allege adequate facts to allow this court to draw a reasonable inference that Amazon is responsible for the "near-accidents" and truck roadway obstructions.

Still, Plaintiffs attribute all the other alleged construction activities and consequent annoyances to Amazon. For the noise pollution, light pollution, dust, vibrations, and cracking allegations, Plaintiffs allege that this was occurring on the Amazon Property or part of the Data Center construction work, over which "Amazon is in complete control." (Compl. ¶ 30; *see id.* ¶¶ 14–15, 21–23 (alleging that Data Center construction is loud and at prohibited hours, flashing blue lights are continuously displayed at the Amazon Property, air quality on the Newsom Property has been diminished by "dust and debris from the construction," and use of heavy machinery "at the [] Data Center site" has caused significant vibrations and cracking in the structure of the Newsom Property home).) Accordingly, considering all the allegations together, the court finds Plaintiffs have pled sufficient facts to suggest that Amazon was "using or authorizing the use of, [its] property, or of anything under [its] control" to cause the various interferences. *Virginian Ry. Co.*, 76 S.E. at 308; *see Leydet v. Germel, Inc.*, No. CL10–2534, 2012 WL 9731139, at *2 (Va. Cir. Ct. Jan. 5, 2012) (finding that plaintiff alleged sufficient action by the defendants where they "owned, occupied, and controlled the Property from which the nuisance arose" (cleaned up)).

### ii. *Substantial and Unreasonable Interference*

Amazon argues that there are insufficient factual allegations to plausibly infer that Amazon's activities endangered Plaintiffs' health or substantially and unreasonably interfered with their property use. (Def.'s Br. at 4–5.) It challenges Plaintiffs' allegations of a "chaotic

workplace" and diminished air quality as missing "the requisite 'factual enhancement' to demonstrate plausibility." (Def.'s Br. at 5 (quoting *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009).) The court disagrees. Plaintiffs allege numerous facts about the dust and debris, road damage, flooding, loud noises, and vibrations to support an allegation that Central VA Marine's office on the Newsom Property has become a "chaotic workplace." (*See* Compl. ¶¶ 13–17, 19, 21–23.) While Plaintiffs could be more specific about the amount or nature of the alleged dust and debris on the Newsom Property, "at the motion to dismiss stage, detailed factual averments are not necessary to avoid dismissal of a claim." *Hammock v. Watts*, 146 F.4th 349, 361 (4th Cir. 2025) (cleaned up). Moreover, a lack of certain details about a few forms of interference, among the many alleged in the complaint, does not warrant dismissal of the nuisance claim.

Amazon maintains that Plaintiffs' allegations of certain individual interferences, including the brown water, noise, diminished air quality, and light pollution, are each insubstantial and thus require dismissal of the entire nuisance claim. (*See* Def.'s Br. at 4–5; Def.'s Reply at 3–4 (Dkt. 21).) In its initial brief, Amazon focuses on the alleged water issues as an example of Plaintiffs' failure to meet the "substantial and unreasonable inference" element of a nuisance claim. It emphasizes the complaint's lack of "facts regarding the severity, frequency, or duration of the alleged 'issues with the water' that could demonstrate either an actual danger to Mr. Newsom's health or a substantial interference with his property use." (Def.'s Br. at 4–5.) Plaintiffs' allegations regarding water pollution, in isolation, may be deficient. Yet Amazon does not cite, nor does the court find, any authority to show that

plaintiffs must plead this level of specificity and severity as to each individual form of interference to state a claim for private nuisance.  Although Plaintiffs do not allege facts showing that it posed an actual danger to Newsom's health,[3] the brown water, alongside all other alleged annoyances, is enough to plausibly suggest that Amazon's construction substantially and unreasonably interfered with the Newsom Property use.

In challenging the allegations about each form of interference separately, Amazon insinuates that Plaintiffs must show that each individual type of interference meets the "unreasonable or substantial" standard on its own.  But in cases involving many alleged forms of interference, Virginia courts do not assess whether each form, in isolation, is substantial or unreasonable.  *See, e.g.*, *Bowers v. Westvaco Corp.*, No. B1-0006, 1991 WL 916676, at \*2 (Va. Cir. Ct. July 19, 1991), *aff'd*, 419 S.E.2d 661 (Va. 1992) ("*Considering the totality of the evidence and circumstances*, the Court concludes that the scope and intensity of the defendants' activity and use of the property . . . unreasonably interfered with the use and enjoyment of the property of the plaintiffs . . . ." (emphasis added)); *Megill v. Wulff*, No. CL 21-3693, 2021 WL 10256877, at \*3 (Va. Cir. Ct. Nov. 16, 2021) (considering the "loud and disruptive noises, vibrations, and lights constantly shining into a home" in deciding that plaintiffs have alleged sufficient facts for their private nuisance claim to survive demurrer); *Martin v. Moore*, 263 Va. 640, 561 S.E.2d

---

[3] Amazon maintains that Newsom's "fear" of drinking the brown water is too speculative to support a claim for relief. That may be so.  The Fourth Circuit has held that where plaintiffs alleged "mere fear of significant health risks" associated with potential "fumes and vapors emanating from [an] oil spill," they did not adequately state a claim.  *Adams v. Star Enter.*, 51 F.3d 417, 422 (4th Cir. 1995).  But the *Adams* court's dismissal of the oil spill nuisance claim turned on the fact that the activity was not "actually physically perceptible from the plaintiff's property" and instead was "incapable of detection from Landowners' properties."  *Id.* at 423.  Here, the alleged interference with the water supply is in fact detectible, in the form of brown water, from Newsom's property.  (*See* Compl. ¶¶ 11–12.)  Moreover, as the court explains throughout Subsection III.A.2.ii, the brown water is not the only alleged interference forming the basis of Plaintiffs' nuisance claim.

672, 678–79 (Va. 2002) (considering all the evidence presented about noise and traffic problems to decide whether the trial court erred in concluding whether there was an actionable nuisance).

In other words, so long as Plaintiffs allege sufficient facts to plausibly infer that, altogether, Amazon's construction activities "substantially impair[s] [Plaintiffs'] comfort, convenience, and enjoyment of the property, causing a material disturbance or annoyance in use of the realty," they have stated the substantial interference element of their nuisance claim. *Nat'l Energy Corp.*, 286 S.E.2d at 182. The court finds that Plaintiffs meet this pleading requirement. Like the truck staging operation challenged in *Bowers v. Westvaco Corporation*, the combined effects of the Data Center construction beginning in May 2025—loud noise, dust, debris, flashing lights, vibrations, structural cracking, flooding, and water contamination— with factual allegations accepted as true, appear to constitute a material disturbance to Plaintiffs' use of the Newsom Property. 419 S.E.2d at 664–67. Plaintiffs also allege that the ongoing nuisance "has significantly devalued the Newsom Property" and caused "cracking to the structure of the home." (Compl. ¶¶ 22, 25.) Under Virginia law, allegations of physical or structural damage to a home and diminished value in property suffice to show unreasonable and substantial interference. *See Nat'l Energy Corp.*, 286 S.E.2d at 182 ("A nuisance may diminish value of realty."); *see also Fancher v. Fagella*, 650 S.E.2d 519, 522 (Va. 2007) (cleaned up) (holding that encroaching trees and plants constitute a nuisance when they cause actual harm or pose imminent danger of harm to the plaintiff's property). In the aggregate, the

allegations about the various interferences are enough to plausibly infer that Amazon's Data

Center activity obstructs Plaintiffs' reasonable and comfortable use of the Newsom Property.

> 3. <u>The fact that Plaintiffs seek redress for harms that may be experienced by other members of the public does not eliminate their ability to bring a private nuisance claim.</u>

Under Virginia law, a plaintiff can bring a private nuisance claim, a public nuisance

claim, or both. *See Bell v. WestRock CP, LLC*, No. 3:17-cv-00829, 2018 WL 3493077, at *2

(E.D. Va. July 20, 2018); *see also Virginia Beach v. Murphy*, 389 S.E.2d 462, 464 (Va. 1990) ("[T]he

trial court erroneously concluded that the activity proscribed in the ordinance could *only* be a

private nuisance."); Restatement (Second) of Torts § 821C cmt. e (A.L.I. 1979) ("When the

nuisance, in addition to interfering with the public right, also interferes with the use and

enjoyment of the plaintiff's land, it is a private nuisance as well as a public one."). A private

nuisance is an activity "which implicates or interferes with a right or interest that is unique to

an individual, such as an interest in the land." *Virginia Beach*, 389 S.E.2d at 463 (emphasis

omitted). A public nuisance is "a condition that is a danger to the public," *Taylor v. City of

Charlottesville*, 397 S.E.2d 832, 835 (Va. 1990), and "affect[s] people generally," *Virginia Beach*,

389 S.E.2d at 463. Private individuals may only bring *public* nuisance claims when they "can

prove a 'special or peculiar' injury, different in kind from that sustained by the community at

large," and "not purely consequential." *Field v. Kroger*, No. 3:20-cv-00682, 2021 WL 1396279,

at *4 (E.D. Va. Apr. 13, 2021) (quoting *Fugate v. Carter*, 144 S.E. 483, 484 (Va. 1928)).

Plaintiffs specify in their complaint that Count 1 is a private nuisance claim. (*See*

Compl. at 5.) Still, Amazon contends that Plaintiffs are alleging a public nuisance claim in

substance because they seek to remedy "harms common to the public at large." (Def.'s Br. at 6.) Amazon points to the following allegations as public harms that cannot support a Virginia private nuisance claim: (1) air pollution, (2) noise pollution, and (3) congestion, traffic, or damage to the public highway. (*Id.* at 6–8.) The court disagrees.

First, Amazon provides no legal authority suggesting that, under Virginia law, where a plaintiff alleges air pollution, noise pollution, or traffic and highway damage, this court *must* construe the associated private nuisance claim as a public nuisance claim. Amazon cites a string of cases that dismiss nuisance claims on the grounds that the plaintiffs seek to remedy public harms without alleging a special and particularized injury. (Def.'s Br. at 7.) But in the cited cases applying Virginia law, the plaintiff had either specifically alleged a *public* nuisance claim or sought to recover for nuisance based on alleged harm that was wholly unrelated to an interest in their own property.[4] *See Field*, 2021 WL 1396279, at *1 (trip and fall caused by parking lot bumper stop in Kroger parking lot); *Hinton v. Kroger*, No. 3:19-cv-00178, 2019 WL 4060339, at *1, 3 (E.D. Va. Aug. 28, 2019) (slip and fall caused by floor mat in a Kroger). In fact, the *Hinton* court specified that the private nuisance claim failed because he had "no property right in the use or enjoyment of the Kroger store where he fell, meaning that his claim falls outside the scope of private nuisance jurisprudence." 2019 WL 4060339, at *3.

---

[4] Similarly, in the South Carolina case that Amazon cites, the plaintiffs clarified that they were bringing "private claims for public nuisance," and included many allegations about "the harm to the community, not to the individual plaintiffs" in their complaint. *See Johnston v. Anderson Reg'l Landfill, LLC*, 725 F. Supp. 3d 527, 536 n.5, 536–37 (D.S.C. 2024). Here, unlike in *Johnston*, Plaintiffs allege only private nuisance and focus solely on interference with Plaintiffs' ability to use and enjoy the Newsom Property.

Here, unlike in the cases cited by Amazon, the alleged nuisance activity interfered with Plaintiffs' ability to use and enjoy their residence and office space, which Newsom owns, and Central VA Marine occupies.  Plaintiffs do not bring a public nuisance claim.  Plaintiffs' complaint also does not contain allegations about the extent to which Amazon's construction site activity interfered with the community's rights generally or imposed a danger to the greater public.[5]  *Cf. Johnston v. Anderson Reg'l Landfill, LLC*, 725 F. Supp. 3d 527, 536 (D.S.C. 2024) (analyzing a nuisance claim under the public nuisance requirements where plaintiffs alleged "throughout the Amended Complaints that Defendants' actions have caused damages not only to Plaintiffs but to others in the community").

Amazon cites several cases applying other states' nuisance laws.  (*See* Def.'s Br. at 7 (first citing *Barker v. Naik*, No. 2:17-cv-04387, 2018 WL 3824376, at *3 (S.D. W. Va. Aug. 10, 2018); then *Johnston*, 725 F. Supp. 3d at 538; and then *Good v. Am. Water Works Co.*, No. 2:14-cv-01374, 2015 WL 3540509, at *8–10 (S.D. W. Va. June 4, 2015)).)  Under West Virginia law, a claim must be for public rather than private nuisance where the "*only* interest that is invaded is an interest shared equally by members of the public."  *Rhodes v. E.I. du Pont de Nemours &*

---

[5] Plaintiffs' complaints about the noise and reference to the Louisa County noise ordinance does not convert their claim to one of public nuisance.  Amazon emphasizes that, in *City of Virginia Beach v. Murphy*, the Virginia Supreme Court held that the "right not to be subjected to unreasonably loud, disturbing, and unnecessary noise, as provided in [the Virginia Beach noise ordinance], is common to all members of the public and not particular to individuals in the enjoyment of their property."  389 S.E.2d at 464 (cleaned up).  However, not only was the *Murphy* court deciding the constitutionality of the ordinance, but it was also using this reasoning to reverse the trial court's conclusion that the noise-related "activity proscribed in the ordinance could *only* be a private nuisance."  *Id.* (emphasis added).  It did *not* hold that loud noises in violation of local ordinances cannot give rise to a private nuisance claim.  In fact, Virginia courts have consistently recognized private nuisance claims based on loud noises.  *See, e.g.*, *Bowers*, 419 S.E.2d at 664, 666; *Megill v. Wulff*, No. CL 21-3693, 2021 WL 10256877, at *3 (Va. Cir. Ct. Nov. 16, 2021); *Nichols v. Vico Constr. Corp.*, No. CL 17-2830, 2018 WL 8798557, at *3 (Va. Cir. Ct. Mar. 1, 2018).  Virginia courts have also considered local laws in deciding whether activity constitutes a private nuisance.  *See, e.g.*, *Bowers*, 419 S.E.2d at 666 ("The court properly considered the zoning classification of the property as an important factor in determining whether the business is so conducted as to constitute a [private] nuisance.").

*Co.*, 636 F.3d 88, 96 (4th Cir. 2011) (emphasis added). In *Rhodes*, because the "release of pollutants directly affect[ed] a municipal water supply" and "[did] not interfere with any private water source, such as a well drilled on private property," the water pollution did not support a private nuisance claim at the summary judgment stage. *Id.* at 96–97. *Barker* and *Good*, two West Virginia class action suits, relied on *Rhodes* to conclude that a private nuisance claim was not available to the putative class members all claiming a shared, common injury. *See Barker*, 2018 WL 3824376, at *1, 3 (finding that "all owner-occupants and renters of residential property within 1.5 miles of" a warehouse fire alleging harm from smoke and air pollutants must make a public not private nuisance claim (cleaned up)); *Good*, 2015 WL 3540509, at *1, 9 (holding that a private nuisance claim was not available in a class action suit brought by residents and businesses affected by chemical infiltration of a water treatment plant).

First, West Virginia law does not govern this case. But even if it did, the complaint does not *solely* allege an interest shared equally by the public, such that Plaintiffs may only bring a public nuisance claim against Amazon. Unlike *Good* and *Rhodes*, Plaintiffs allege "issues with the water at [Newsom's] house" and do not allege that Amazon activity exclusively polluted a shared municipal water supply. (Compl. ¶ 11.) Nor does the complaint suggest that the dust diminishing the "air quality on the Newsom Property," the loud noises, or other interferences invade an interest shared equally by members of the public. (*Id.* ¶¶ 17, 21.) There is no putative class or allegation of similar harm to other residents. In fact, Newsom specifies that the reduced air quality, noise, and damage to roadways have uniquely harmed Plaintiffs by presenting individualized harm to their business through increased risks to customers seeking

- 20 -

a clean and professional boat service and storage site. (*See id.* ¶¶ 18–20.) Accordingly, it would be improper to dismiss these portions of Newsom's claim at this stage.

Plaintiffs seek to recover for activities interfering with their rights to use and enjoy the Newsom Property. The mere fact that the alleged harm could have been experienced by others in the community does not automatically foreclose their private nuisance claim. *See* Restatement (Second) of Torts § 821C cmt. e (A.L.I. 1979) ("When the nuisance, in addition to interfering with the public right, also interferes with the use and enjoyment of the plaintiff's land, it is a private nuisance as well as a public one."); *E.W. Face & Son v. Cherry*, 84 S.E. 10, 10–11 (Va. 1915) (holding that plaintiff's allegation that smoke and soot affects both their dwelling and "other property in the neighborhood . . . does not have the effect of converting what is essentially a private nuisance into a public nuisance" (cleaned up)). Accordingly, Plaintiffs have sufficiently stated a private nuisance claim against Amazon. The court will not dismiss Count 1 of Plaintiffs' complaint.

## B. Temporary Injunctive Relief Claim (Count 2)

Plaintiffs' second claim is for "temporary injunctive relief." (Compl. at 5–6.) In addition to asking for preliminary injunctive relief as a standalone count, Plaintiffs also request "an order temporarily enjoining Defendant from further construction on the Amazon Property" in their prayer for relief. (*Id.* at 6–7.)

### 1. Injunctive Relief Pled as a Separate Count

Amazon argues for the dismissal of Count 2 on the grounds that "injunctive relief is a remedy, not an independent cause of action." (Def.'s Br. at 10 (quoting *Bell*, 2018 WL

3493077, at *1).)  Federal courts have repeatedly held that "it is improper to frame a request for an injunction as a separate cause of action."  *Bloch v. Exec. Off. of the President*, 164 F. Supp. 3d 841, 862 (E.D. Va. 2016) (quoting *Dwoskin v. Bank of Am.*, 850 F. Supp. 2d 557, 573 (D. Md. 2012)) (dismissing a count that sought injunctive relief against all defendants for failure to state a claim); *see Blankenship v. Consolidation Coal Co.*, 850 F.3d 630, 640 (4th Cir. 2017) ("Injunctive relief is a remedy, not a cause of action."). Yet some lower Virginia courts have previously allowed a request for injunctive relief to be considered as an independent count. *See Chanah, Inc. v. Summers*, No. CL22-3681, 2022 WL 20210688, at *2–3 (Va. Cir. Ct. Oct. 28, 2022) ("To sustain the demurrer on the basis that injunction is not an independent cause of action would be to put form over substance."); *JPMCCM 2010-C1 Aquia Off. LLC v. Mosaic Aquia Owner, LLC*, No. CL17-250, 2019 WL 4134035, at *6 (Va. Cir. Ct. Jan. 15, 2019) (rejecting defendants' argument that injunctive relief "cannot be pled as a separate count in the complaint" and overruling the demurrer as to this count). *But see Fid. Nat. Title Ins. Co. v. Washington Settlement Grp., LLC*, No. CL–2012–4793, 2013 WL 9541969, at *14 n.9, 15 (Va. Cir. Ct. Sept. 4, 2013) (noting that "the requested injunction is not a separate cause of action, but, instead, a form of relief sought," but still overruling the demurrer as to this request).

Generally, federal law governs pleading standards when federal courts are sitting in diversity. *See Fuller v. Aliff*, 990 F. Supp. 2d 576, 580 (E.D. Va. 2013). Here, the issue appears to be one of form rather than substance, as temporary restraining orders and preliminary injunctions are governed by Federal Rules of Civil Procedure 65 and 52. *See Wudi Indus. (Shanghai) Co. v. Wai L. Wong*, 70 F.4th 183, 189 (4th Cir. 2023); *Power Home Solar, LLC v. Sigora*

- 22 -

*Solar, LLC*, No. 3:20-cv-00042, 2021 WL 3856459, at \*14 (W.D. Va. Aug. 30, 2021) (noting that district courts dismissing remedies pleaded as causes of action "is more a matter of form than of substance"). Therefore, whether Plaintiffs may plead injunctive relief as a standalone count—rather than simply plead it in their prayer for relief—is a procedural pleading issue that should be governed by federal law. *See Costine v. Correct Care Sols., LLC*, No. 2:19-cv-00053, 2020 WL 809376, at \*4 (E.D. Va. Feb. 18, 2020) (citing federal rather than state cases in a diversity suit to support the finding that plaintiff's "counts" of punitive damages, "prayer for relief," and "jury demand" should be dismissed as counts because they are not independent causes of action); *Fyfe Co., LLC v. Structural Grp., LLC*, No. CIV. CCB-13-176, 2014 WL 3956162, at \*9 (D. Md. Aug. 11, 2014) (citing federal cases for the proposition that injunctive relief is a remedy rather than an independent cause of action in a diversity case).

Therefore, the court will dismiss Count 2 as a separate cause of action. This dismissal does not impact Plaintiffs' ability to seek injunctive relief for their Count 1 private nuisance claim.

## IV.    Conclusion

For the foregoing reasons, the court will deny Amazon's motion to dismiss Count 1 and grant the motion as to Count 2. Count 2 will be dismissed without prejudice.[6]

An appropriate Order will issue.

---

[6] This Memorandum Opinion does not address the Plaintiffs' outstanding motion for preliminary injunction, (Dkt. 27), which is subject to a different standard of review than their motion to dismiss.

**ENTERED** this <u>10th</u> day of July, 2026.

HON. JASMINE H. YOON
UNITED STATES DISTRICT JUDGE